FILED

2023 Aug-11  PM 04:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **SERA STANCIL RICE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. 3:23-cv-00480-LCB** |
| **ARISTOCRAT LEISURE, LTD.,** | § | |
| **ARISTOCRAT** | § | |
| **TECHNOLOGIES, INC., and** | § | |
| **PRODUCT MADNESS, INC.,** | § | |
| | § | |
| **Defendants.** | § | |

## OPINION & ORDER

Plaintiff Sera Rice brings this action seeking to recover gambling losses of Alabama citizens pursuant to Alabama Code § 8-1-150(b). In April 2023, Defendants Aristocrat Lesiure, Ltd., Aristocrat Technologies, Inc., and Product Madness, Inc., (collectively, "Aristocrat") removed the action from the Circuit Court of Colbert County, Alabama, on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). (Doc. 1.) Rice now moves to remand the case to state court, claiming that the amount in controversy does not exceed $75,000, as required by § 1332(a). For the reasons below, the Court **GRANTS** Rice's motion. (Doc. 12.)

## I.     BACKGROUND

### A.     STATUTORY FRAMEWORK

1

Gambling has long been illegal in the state of Alabama. "A person engages in gambling if he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he or someone else will receive something of value in the event of a certain outcome." Ala. Code § 13A-12-20(4) (1975). In 1852, the Alabama legislature codified a civil cause of action to recover money paid and lost in gambling endeavors. Id. § 8-1-150. The statute reads, in relevant part, as follows:

> (a) All contracts founded in whole or in part on a gambling consideration are void. A person who has paid money or delivered anything of value lost upon any game or wager may recover such money thing, or its value by an action commenced within six months from the time of such payment or delivery.
>
> (b) Any person may also recover the amount of such money, thing, or its value by an action commenced within 12 months after the payment or delivery thereof for the use of the wife or, if no wife, the children or, if no children, the next of kin of the loser.

Id. § 8-1-150(a)−(b).

## B.   FACTS

Aristocrat Leisure is an Australia corporation with its principal place of business in Australia. (Doc. 1 at 3.) Aristocrat Technologies is a Nevada corporation with its principal place of business in Nevada. (Doc. 1 at 3.) Product Madness is a Delaware corporation with its principal place of business in England. (Doc. 1 at 3.) Aristocrat is in the computer game industry. (Doc. 1-1 at 9.) Specifically, the company develops and markets games that can be played online or via cellphone

applications. (Doc. 1-1 at 9.) Several of Aristocrat's products are games of chance, such as those involving virtual slot machines, card games, and/or casino themes. (Doc. 1-1 at 9.) In those games, a player initially receives free virtual coins to spend in order to play the game. (Doc. 1-1 at 10.) For example, for Aristocrat's slot-machine games, a player uses coins to "spin" the reel. (Doc. 1-1 at 10.) If the player loses the spin, the coins he wagered are lost. (Doc. 1-1 at 10.) If the player wins, he receives more coins. (Doc. 1-1 at 10.) If the player runs out of coins entirely, then he can either stop playing the game or purchase additional coins. (Doc. 1-1 at 10.) In other words, he can buy more playing time.

Many Alabama citizens play Aristocrat's games of chance and have purchased additional playing time. (Doc. 1-2 at 3.) On March 8, 2023, Sera Rice, an Alabama citizen, filed this action against Aristocrat in the Circuit Court of Colbert County, Alabama, pursuant to Alabama Code § 8-1-150(b), seeking to recover the money lost by Alabama citizens on Aristocrat's games of chance between March 2022 and March 2023. (Doc. 1-1 at 17−18.) Shortly thereafter, Aristocrat removed the action to this Court, pursuant to 28 U.S.C. §§ 1441, 1446. (Doc. 1 at 1.) Aristocrat relied on 28 U.S.C. § 1332 as the grounds for removal, claiming that this Court has subject matter jurisdiction under the statute's diversity of citizenship provision. (Doc. 1 at 4.) Along with its notice of removal, Aristocrat attached a declaration of the vice president of the mobile game division of Aristocrat Leisure, James Riney.

(Doc. 1-2.) Riney declared that, after reviewing Aristocrat's financial reporting system for the period between March 2022 and March 2023, the total amount that Alabama citizens had spent on Aristocrat's games of chance far exceeded $75,000.[1] (Doc. 1-2 at 3.) Rice then filed a motion to remand. (Doc. 12.)

## II.  LEGAL STANDARD

Federal courts are courts of limited jurisdiction. Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Accordingly, "when an action is removed from state court, the district court first must determine whether it has original jurisdiction over the plaintiff's claims." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

A removing defendant has the burden of establishing the propriety of removal under § 1441 and, therefore, must establish the existence of federal jurisdiction. *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002). Because of federalism concerns implicated by removal jurisdiction, removal statutes must be construed narrowly, with all doubts to be resolved in favor of remand. *Am. Tobacco*

---

[1] In one of Aristocrat's games, Heart of Vegas, Riney reported that Alabama citizens collectively spent more than $900,000. (Doc. 1-2 at 3.)

*Co.*, 168 F.3d at 411; *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th

Cir.1998) (noting Eleventh Circuit preference for remand where federal jurisdiction

not "absolutely clear").

If the alleged basis for federal jurisdiction is diversity of citizenship under 28

U.S.C. § 1332, the removing defendant must prove: (1) that there is complete

diversity of citizenship between the plaintiffs and the defendants; and (2) that the

amount in controversy is greater than $75,000. 28 U.S.C § 1332(a). If the amount in

controversy is not apparent from the face of the complaint, the defendant must prove

by a preponderance of the evidence that "the amount in controversy more likely than

not exceeds . . . the jurisdictional requirement." *Roe v. Michelin N. Am., Inc.*, 613

F.3d 1058, 1061 (11th Cir. 2010) (citation omitted).

III.    DISCUSSION

The only issue before the Court is whether the amount in controversy in this

action exceeds $75,000. It is undisputed that there is complete diversity between the

parties as Rice is a citizen of Alabama, and Defendants are citizens of Australia,

Nevada, Delaware, and England.[2] (Doc. 1 at 5.) It is also undisputed that, between

March 2022 and March 2023, Alabama citizens collectively spent far more than

$75,000 on Aristocrat's games of chance. (Doc. 1-2 at 3.) But Rice seeks to recover

---

[2] For purposes of diversity jurisdiction, a corporation is a citizen of both the state where it is
incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

the amount each Alabama citizen lost and to allow the benefit to accrue to the family

of each citizen. (Doc. 1-1 at 17.) Thus, the crux of the issue is more nuanced than it

appears, and Rice's motion turns on whether, for the purposes of determining

whether the amount in controversy requirement has been satisfied, the Court can

aggregate the individual monies lost by each Alabama citizen.

   As a threshold matter, the Court notes that the nature of the underlying dispute

is unusual. Rice appears in a representative capacity as the sole plaintiff, and she

brings this action under Alabama Code § 8-1-150(b) to recover for numerous, and

currently unknown, Alabama citizens. (Doc. 1-1 at 13.) The Court has serious doubt

as to whether § 8-1-150(b) permits Rice to bring such an action. *See Davis v. Orme,*

*36 Ala. 540 (1860).*[3] But for the purposes of deciding whether this Court has

jurisdiction over Rice's claims, the Court will analyze the action in the manner in

which it has been pleaded.

---

[3] In *Davis*, Daniel Davis, "suing for the use of Mrs. Julian Davis, wife of James Davis," brought an action to recover $400 that Thomas Orme won from James on a bet for a horse race. *Davis*, 36 Ala. at 540. Receiving the case on appeal, the Supreme Court of Alabama had to decide whether Julian could still recover because Daniel used a third party to place the wager with Orme. *Id.* at 545. The Supreme Court of Alabama held that she *could* still recover, explaining that the policy of the statute was "that the wife, children, or next of kin, of one who had improvidently lost his property at the card-table, or on the racecourse, might re-possess themselves thereof." *Id.* at 546. Based on this Court's understanding of *Davis*, it *appears* that the statute permits a one-to-one ratio for recovery: one person may sue to recover the loss of a gambler and return it to the gambler's family. In other words, the wording of the statute does not seem to permit one person to recover multiple gambling losses for multiple families in the same action, which is what Rice seeks to do here. In fact, the manner in which Rice has brought this action *could* be viewed as a means to avoid filing a class action lawsuit.

Additionally, not only is there a dearth of case law on § 8-1-150(b), but there is also no controlling precedent from the Eleventh Circuit directly applicable to the amount in controversy issue. There is, however, case law from the District of Columbia and the Ninth Circuit where the courts had to determine whether the amount in controversy threshold was satisfied where there was a single plaintiff seeking to recover for numerous individuals but in a representative capacity. In those opinions, the courts relied upon the non-aggregation doctrine. As such, the Court will first look to the non-aggregation doctrine and then examine how those courts applied the doctrine in their analyses.

Under the non-aggregation doctrine, "separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement" for the purposes of diversity jurisdiction. *Snyder v. Harris*, 394 U.S. 332, 335 (1969); *see also Troy Bank of Troy, Ind., v. G.A. Whitehead & Co.*, 222 U.S. 39, 40−41 (1911); *Pinel v. Pinel*, 240 U.S. 594, 596 (1916). The doctrine is derived from the Supreme Court's "interpretation of the statutory phrase 'matter in controversy.'" *Snyder*, 394 U.S. at 335. "Aggregation has been permitted only in two scenarios: (1) [where] a single plaintiff seeks to aggregate two or more of his own claims against a single defendant[;] and (2) [where] two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Id.*

The District Court for the District of Columbia applied the non-aggregation doctrine and granted motions to remand both in *Breakman v. AOL LLC*, 545 F. Supp. 2d 96 (D.D.C. 2008); and *Nat'l Consumers League v. Flowers Bakeries, LLC*, 36 F. Supp. 3d 26 (D.D.C. 2014). In each of those cases, an individual plaintiff brought an action under the private attorney general provision of the District of Columbia Consumer Protection Procedures Act ("the DCCPPA"). *See* D.C. Code § 28-3905(k)(1)(B) (2021) ("An individual may, on behalf of that individual, or on behalf of both the individual and the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District . . . .").

In *Breakman*, the plaintiff alleged that the defendant, AOL, "engaged in unlawful trade practices" in violation of the DCCPPA. *Breakman*, 545 F. Supp. 2d at 99. According to AOL, Breakman's action would reach "28,451 consumers in the District of Columbia." *Id.* at 100. AOL removed the case to federal court, citing diversity jurisdiction under § 1332(a) as a ground for removal. *Id.* Citing the non-aggregation doctrine and its origins, the court reasoned that "the doctrine still applies when separate and distinct claims are asserted on behalf of a number of individuals, regardless of whether an action involves a simple joinder of multiple plaintiffs, or a representative action." *Id.* at 103 (internal citation and quotation marks omitted). The court concluded that the actual and statutory damages of the consumers represented

8

by Breakman could not be aggregated to satisfy the amount in controversy requirement. *Id.* at 103−04. Thus, the court remanded the action. *Id.* at 108.

The court reached the same conclusion in *Flowers*. There, a public interest organization sued a manufacturer of food products, alleging violations of the DCCPPA related to the marketing of bread products. *Flowers*, 36 F. Supp. 3d at 29. Flowers removed the case, identifying three independent grounds for removal, including diversity jurisdiction. *Id.* Flowers argued that there was complete diversity between the parties and that potential damages would be well beyond $75,000 as the plaintiff had alleged a minimum of $1,500 in statutory damages for each violation and that more than 300,000 units had been sold to consumers. *Id.* at 31−32. The court rejected Flowers' framing of the amount in controversy, stating that "[c]alculating the amount in controversy in [that] way . . . runs afoul of the non-aggregation principal that '[t]he separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement' except 'in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest.'" *Id.* at 32 (citing *Snyder*, 394 U.S. at 335)). Discussing how the doctrine applied to private attorney general actions, the court held that, "so long as individual consumers are eligible to recover individual damages, the consumers do not have a 'common and undivided interest' that may be aggregated under the non-aggregation principal announced in *Snyder*." *Id.*; *see also*

D.C. Code § 28-3905(k)(1)−(2) (stating that damages are "payable to the consumer").

The Ninth Circuit Court of Appeals's analysis in *Urbino v. Orkin Servs. of California, Inc.*, 726 F.3d 1118 (9th Cir. 2013) mirrors that of *Breakman* and *Flowers*. There, the Ninth Circuit also applied the non-aggregation doctrine when it vacated and remanded the district court's denial of a motion to remand for lack of federal jurisdiction. *Urbino*, 726 F.3d at 1122. Urbino brought a representative cause of action under California's Labor Code Private Attorneys General Act. Cal. Lab. Code § 2699(a) (2016) ("Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3."). Orkin presented evidence that the alleged labor code violations would give rise to claims involving 811 employees. *Urbino*, 726 F.3d at 1121. The issue on appeal was "whether the penalties recoverable on behalf of *all* aggrieved employees may be considered in their totality to clear the [diversity] jurisdictional hurdle." *Id.* at 1122 (emphasis in original). The Ninth Circuit ultimately held that they could not and that the statutory threshold was

not met. *Id.* at 1123. The Ninth Circuit explained that Orkin's obligation to the

employees represented by Urbino was to the individuals severally, not as a group.

*Id.* at 1122. Ergo, the claims were not based on a common and undivided interest

and could not be aggregated. *Id.*; *see also Canela v. Costco Wholesale Corp.*, 971

F.3d 845, 849–50 (2020) (same).

Guided by the non-aggregation doctrine and the principle that the removal

statute should be construed narrowly in favor of remand, the Court finds the above

analysis persuasive and applicable. The Court acknowledges that this case differs

from *Breakman*, *Flowers*, and *Urbino*, in that Rice does not bring her action pursuant

to a statutory private attorney general action, nor is she pursuing her own claims

against Aristocrat. But at the macro level, the framework of the actions is identical:

there is a single plaintiff acting in a representative capacity to recover damages that

would be payable to non-parties.

The Court recognizes that Aristocrat cites *In re Folgers Coffee, Mktg. Litig.*,

2021 WL 5106457, *1 (W.D. Mo. Aug. 19, 2021) to support its position—also a

private attorney general action brought under the DCCPPA—wherein the Western

District of Missouri interpreted the non-aggregation doctrine differently than the

District of Columbia and the Ninth Circuit. *Folgers*, 2021 WL 5106457 at *1. There,

the court considered the damages payable directly to the plaintiff, along with

attorney fees and the cost of an injunction and held that the amount in controversy

threshold was met and thus that the court had jurisdiction under § 1332(a). *Id.* at *3−5. The court rejected the plaintiff's argument that the non-aggregation doctrine required the court to divide the attorney fees and cost of the injunction among the entire population of the District of Columbia. *Id.* at *3−4.

Notwithstanding the fact that § 8-1-150 does not provide for attorney fees or equitable relief, the Court finds that the facts in *Folgers* diverge from those in both this case and the cases discussed previously. In *Folgers*, the plaintiff claimed to represent the general public, not a particular subset of the population. *See id.* at *3 ("Plaintiff argues that any attorneys' fees he obtains in this suit must be divided among the entire population of the District of Columbia."). Moreover, the plaintiff in *Folgers* did not seek to recover damages that would be payable to other consumers. *Id.* In contrast, in this case and in those cases discussed above, the plaintiff represents not the entire population but a particular category of persons, and the plaintiff looks to recover damages that would be payable to those persons. Thus, the Court finds the analysis in *Folgers* unpersuasive.

Accordingly, this Court finds that the non-aggregation doctrine applies here and precludes aggregation for the calculation of the amount in controversy. By seeking to recover "for the use of" the losers' families, Rice asserts numerous individual claims. But those claims do not share a common and undivided interest. The family of each Alabama citizen who lost money playing Aristocrat's games of

12

chance has an individual or separate interest in recovering that loss. To use the

example Rice sets forth in her brief, a wife whose husband lost $40,000 seeks to

recover $40,000, and the next of kin of a citizen who lost $1.99 seeks to recover

$1.99. (Doc. 12 at 11.) Those interests do not overlap and do not affect each other.

Thus, the individual claims cannot be aggregated for the purposes of establishing the

requisite amount for diversity jurisdiction.

Aristocrat argues that phrase "for the use of" in § 8-1-150(b) is of no legal

consequence, so the statute does not restrict or otherwise govern how an award could

be used. (Doc. 16 at 17.) In other words, Aristocrat claims that Rice seeks a single,

undivided recovery. (Doc. 16 at 13−14.) The Court disagrees. Under Alabama law,

"[t]he fundamental rule of statutory construction is to ascertain and give effect to the

intent of the legislature in enacting the statute." *IMED Corp. v. Systems Eng'g

Assocs. Corp.*, 602 So. 2d 344, 346 (Ala. 1992). "Statutes are to be considered as a

whole, and every word given effect if possible." *Ex parte Beshears*, 669 So. 2d 148,

150 (Ala. 1995). In fact, "[t]here is a presumption that every word, sentence, or

provision of a statute has some force and effect and that no superfluous words or

provisions were used." *Barnett v. Panama City Wholesale Inc.*, 312 So. 3d 754, 757

(Ala. 2020) (internal quotations and ellipses omitted). "Words in a statute must be

given their natural, plain, ordinary, and commonly understood meaning, and where

plain language is used a court is bound to interpret that language to mean exactly what it says." *IMED*, 602 So. 2d at 346.

Applying those principles, the Court finds that the phrase "for the use of" in Ala. Code § 8-1-150(b) *has* legal significance. While "any person" can bring an action under the statute, the statute *does* restrict the recovery in that it must be returned to family of the one who gambled and lost. *See Davis*, 36 Ala. at 546 (holding that the wife of the gambler could still recover when a third party placed the bet and noting that the statute's policy is "that the wife, children, or next of kin, of one who had improvidently lost his property at the card-table, or on the racecourse, might re-possess themselves thereof"). Therefore, Rice, personally, would not receive a single, undivided recovery to spend at her discretion.

## IV.   CONCLUSION

Aggregation in this matter would be improper. As such, the amount in controversy threshold has not been met, and this Court does not have subject matter jurisdiction over this action. The Court thus **GRANTS** Rice's motion to remand, and this action is **REMANDED** to the Circuit Court of Colbert County, Alabama. (Doc. 12.)

15

**DONE** and **ORDERED** August 11, 2023.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE